**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOHN SAKON,                           )
    *Plaintiff*,                        )
                                )
v.                                    )
                                )    3:25-CV-898 (OAW)
TOWN OF MANCHESTER, et al,            )
    *Defendants*.                       )
                                )

## ORDER GRANTING IN PART MOTION TO DISMISS

**THIS ACTION** is before the court upon Defendants' Amended Motion to Dismiss and memorandum in support hereof (together, "Motion"). ECF Nos. 20 and 20-1. The court has reviewed the Motion, Plaintiff's opposition brief, ECF No. 29, Defendants' reply brief, ECF No. 34, and the record in this matter, and is thoroughly advised in the premises.[1] After careful review, the Motion hereby is **GRANTED.**

### I.    BACKGROUND[2]

This case arises from Plaintiff's arrest by Manchester police on June 14, 2023, but his troubles with the Manchester Police Department began some six years earlier.

As a preliminary matter, the court notes that the operative complaint at times references several dates and incidents with unclear connections to one another, if at all. For example, Plaintiff mentions that his arrest on June 14, 2023, was for charges of stalking, breach of peace, and disorderly conduct, and that he was released by the

---

[1] Plaintiff filed an affidavit of facts in opposition to summary judgment, ECF No. 30, but that clearly is inapposite here, where the court is bound to review of the facts in the complaint. The court therefore disregards the affidavit.

[2] All factual allegations are taken from the Amended Complaint, ECF No. 1-5, and are presumed true for the purpose of this ruling.

arraignment judge the next day. *See* ECF No. 1-5 at 2, 11–12. However, he also inexplicably meanders into his "being escorted to [a] Manchester Police holding cell" on June 16, 2023, *id.* at 3, which would have been the day ***after*** his release from custody at his June 15 arraignment (following his June 14 arrest). Then, as to June 15, 2023 (his release date from the June 14 arrest), he mentions that police wrote a report mentioning that on May 24, 2023, officers had relied upon yet *another* report from July 18, 2021. *Id.* at 6.[3] At that point in his complaint, it is entirely unclear whether this "report of 06/15/2023," *id.*, related to the June 14 arrest, some other arrest from June 15, or something else altogether. It is also unclear what, if anything, is alleged to have happened on May 24, or why *that* incident might be relevant. Further, within the short span of time between June 14 and June 16 of 2023 (dates referenced at various parts in Plaintiff's briefing, and often with little context), it is unclear why Plaintiff would have been in custody on June 16, though it appears that he was not *consistently* detained between June 14 and June 16, because he was released from court on June 15. Therefore, it appears that Mr. Sakon might have been separately arrested and detained on June 15. Plaintiff also later clarifies that he was previously arrested on May 24, 2023. *Id.* at 6–7. And while Mr. Sakon notes at various points in his complaint that "the charges terminated in favor of the plaintiff" on May 23, 2025, *id.* at 12, 14, it appears he is at least referencing the charges from his arrest on June 14, 2023, but it is unclear whether he also means to reference his charges from any June 15 arrest, and/or his arrest from May 23, 2023.[4]

---

[3] "In report of 06/15/2023, Officer Kind and Officer Augusto signed a statement that on 05/24/2023, they reviewed and relied upon the 07/18/2021 report of Officer Hylton in detaining and arresting Sakon on 05/24/2023 . . . ." *Id.* at 6 ¶ 11.

[4] *Cf.,* Criminal/Motor Vehicle Conviction Case Detail, H12M-CR23-292614-0, available at https://www.jud2.ct.gov/crdockets/CaseDetailDisp. aspx?source=Pending&Key=609baa8b-801c-4902-9273-aa4fcca1d7f6 (last visited Mar. 31, 2026) (noting a Criminal Trespass in the First Degree conviction stemming from an arrest on May 24, 2023).

The court notes *all of this* in an effort simply to explain the context through which the court painstakingly has attempted to follow the plaintiff's complaint and the nature of and chronology of his claims.  With that disclaimer, the court returns to the complaint.

Long before his arrests in 2023, Plaintiff notes that he was arrested by the Manchester Police Department on three separate occasions in 2017.[5]  Plaintiff sued the Town of Manchester for malicious prosecution based on these arrests.  In June 2021, a Manchester officer authored a report memorializing a trespass complaint lodged against Plaintiff (the "2021 Report").[6]  And on May 24, 2023, Plaintiff was arrested when he went to Manchester "to exercise court-ordered visitation" with his son.[7]  ECF No. 29 at 2.  Plaintiff's relationship with the Manchester PD was "strained" and "unfavorable."[8]  ECF No. 1-5 at 2.

On June 14, 2023, Plaintiff asserts that he was sitting in his car, legally parked, when he was detained by Manchester police.  Plaintiff's opposition makes clear that he was parked in front of the residence of the mother of his minor child for the purpose of collecting his child for his court-ordered visitation.[9]  The officers apparently believed that the exchange of the child was to be done at the local library, and so they arrested him for breach of the peace and stalking.

Plaintiff believes that these suspected crimes were pretextual, and that officers intended to arrest Plaintiff even without probable cause.  He further asserts that this arrest

---

[5] All three of these arrests were for violation of a protective order that listed Plaintiff's wife as the protected party.  Plaintiff was tried and acquitted on all charges.  ECF No. 29 at 1.
[6] The opposition shows that this complaint also was lodged by Plaintiff's wife, who by then was his ex-wife.  ECF No. 29 at 32.
[7] It is not clear whether this arrest resulted in any further prosecution or litigation.
[8] Plaintiff's opposition also refers to nonspecific whistleblowing activities allegedly undertaken by Plaintiff to uncover municipal corruption involving the Manchester Police Chief.  ECF No. 29 at 2.  As these allegations are not included in the complaint, they are disregarded here.
[9] This appears to be the same type of conduct for which Plaintiff was arrested only three weeks prior.

was based, improperly, upon the uncorroborated 2021 Report, even though that report ought to have been destroyed by the time of his 2023 arrest.

Officers removed Plaintiff from his car (without his jacket) and placed him into a squad car. Plaintiff informed the officers that he is both elderly and disabled. It was raining at the time, and Plaintiff asserts that he became soaked through.

The officers held Plaintiff on a $25,000 bond, which Plaintiff feels was unreasonable (particularly given that he was released on his own recognizance the very next day at his arraignment). While being escorted to a holding cell, Plaintiff informed officers that when he had been detained on June 22, 2017, his cell had been so cold that he developed hypothermia and had to be transported to a hospital for treatment. He asked the officer for two blankets, since he already was wet and cold. The officer failed to provide the blankets "in a timely manner." The complaint does not specify exactly how long it took the officer to provide the blankets.

Plaintiff asserts that as a result of his 2023 detention, he was diagnosed with pneumonia a month later, which in turn caused health issues for over a year thereafter. He had cardiac troubles that culminated in a heart attack and emergency heart surgery in November 2023; recurring pneumonia through at least July 2024; and Guillain-Barre Syndrome, which left him in hospital for over a week in September 2024.

In 2025, Plaintiff's was tried on unidentified charges stemming from the June 2023 arrest and convicted. During trial, officers included reference to the 2021 Report in their testimony. Specifically, there was testimony that one officer called Plaintiff on June 28, 2021, in relation to the trespass complaint, but Plaintiff denies that any call occurred.

4

## II.    <u>LEGAL STANDARD</u>

To withstand a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard is not a probability requirement, but the pleading must show, not merely allege, that the pleader is entitled to relief.  *Id.*  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id.*  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  However, when reviewing a 12(b)(6) motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor.  *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007).

## III.    <u>DISCUSSION</u>

Plaintiff has asserted eleven claims against the defendants.[10]  Counts One and Two assert negligence claims (Count Two is predicated upon premises liability) arising from the alleged neglect of Plaintiff's health when he was detained in June 2023.  Count Three asserts an elder abuse claim predicated upon the same conduct. Counts Four and

---

[10] Though Plaintiff appears to revise or redefine his claims in his opposition brief, the court disregards such attempts and reviews only the claims actually stated in the complaint.

Five assert civil rights claims (a 1983 claim and a Monell claim, respectively) for the officers' reliance upon the 2021 Report in effecting the 2023 arrest.  Count Six (first) asserts a defamation claim predicated upon the officers' testimony at Plaintiff's trial. Count Six (second) asserts a civil rights claim for depriving Plaintiff of the opportunity to seek legal advice in relation to the 2021 Report.  Counts Seven and Eight assert claims for false arrest predicated on the June 2023 arrest (the former specifically on the theory that the arrest could not have been made without a warrant, and the latter on the theory that the arrest could not have been made in reliance upon the 2021 Report).  Count Nine asserts a claim of malicious prosecution.  And Count Ten asserts a 1983 civil rights claim for interference with Plaintiff's parental rights.  The court addresses each Count seriatim.

### A. <u>*Counts One, Two, and Three*</u>

Any claim predicated upon the alleged neglect of Plaintiff's health when he was detained in June 2023 must be dismissed for failure to state a claim.  Even assuming that Defendants owed Plaintiff a duty of care, the only specific conduct alleged to support this claim is the failure to "timely" provide two blankets to Plaintiff.  This is too nonspecific an allegation to show any negligence, particularly since Plaintiff himself states that he was only detained for 16–18 hours total.  What Plaintiff considers to be timely is not dispositive of negligence, even with the air conditioning running, or on a chilly day in late June.

Plaintiff's elder abuse claim also must be dismissed.  In the first instance, it is not clear that this cause of action can be stated against these defendants, since the relevant statute clearly states that "no cause of action for neglect or abandonment may be brought against any person who has no contractual obligation to provide care to an elderly person unless such neglect was wilful or criminal."  Conn. Gen. Stat. Ann. § 17b-462(c).

6

Defendants are not alleged to have had a contractual obligation to care for Plaintiff, which in itself is fatal to this claim. Moreover, though, the delayed provision of blankets alone cannot support an inference of neglect in the first instance, much less that such neglect was willful or criminal.

Accordingly, Counts One, Two, and Three are dismissed.

### B. *Counts Four and Five*

Counts Four and Five both allege civil rights violations in relation to the 2021 Report. Count Four asserts a claim pursuant to 42 U.S.C. § 1983, and Count Five asserts a *Monell*[11] claim. Plaintiff contends that Defendants' reliance upon the 2021 Report in making the May 2023 arrest violates his Fourth Amendment rights.

Plaintiff's position is predicated entirely upon a part of Connecticut's Freedom of Information Act ("FOIA") that requires law enforcement agencies to review records related to criminal allegations one year after creation, and if the allegations are uncorroborated by that time, to destroy the records. Conn. Gen. Stat. § 1-216. But precedential authority clearly shows that an alleged FOIA violation does not implicate any rights under the Fourth Amendment. *Tompkins v. Freedom of Info. Comm'n*, 136 Conn. App. 496, 506, (2012) ("[T]he personal privacy interest protected by the fourth and fourteenth amendments is very different from that protected by the statutory exemption from disclosure of materials . . . .") (citing *Chairman v. Freedom of Information Commission*, 217 Conn. 193 (1991)). Accordingly, both these Counts fail to state a claim.

---

[11] *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978).

### C. *Counts Six (first and second)*

Neither the first nor second Count Six states a claim upon which relief may be granted. The first (alleging defamation) is barred by testimonial privilege.  No officer can be sued for the testimony they provided at Plaintiff's criminal trial, even if they testified falsely. *Daloia v. Rose*, 849 F.2d 74 (2d Cir. 1988) (holding that police officers who testify at adversarial proceedings are absolutely immune from suit arising from that testimony). And as to the second, Plaintiff quite simply cannot sue for a violation of his right to counsel during a phone call he insists never happened.  And if the call did happen, Plaintiff insists he would have refused to participate without advice of counsel.  Thus, Plaintiff's own recount of the facts fails to show any violation of his right to counsel.  Both Counts Six therefore must be dismissed.

### D. *Counts Seven, Eight, Nine, and Ten*

In all these Counts, Plaintiff contends that Manchester officers did not have probable cause to arrest him in June 2023 because they did not have a warrant and they relied upon the 2021 Report in making the arrest.  Neither argument has any merit.  The only requirement for an arrest is probable cause. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff.").  "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)).  Plaintiff's alleged facts show that Plaintiff admits that the June 2023 arrest

8

was the second in a matter of weeks, that both arrests arose from similar circumstances (picking up his son for court-ordered visitation), and that two of the defendant officers were present at both arrests.  These facts alone are sufficient to support probable cause to arrest Plaintiff, even disregarding the 2021 Report (whether it was a trespass notice or some other relevant document).  And even if the officers did mistakenly rely upon the 2021 Report in making the arrest, "[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause ... and in those situations courts will not hold that they have violated the Constitution."  *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002).  Accordingly, all these Counts also must be dismissed.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, ECF No. 20, is **GRANTED.**

2. The amended complaint, ECF No. 1-5 hereby is **DISMISSED** in its entirety.

    a. Counts Four, Five, both Counts Six, Counts Seven, Eight, Nine, and Ten are dismissed **with prejudice.**  The court finds that it would be futile to attempt any amendment to any of these claims.  *See Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 571 (S.D.N.Y. 2024) ("Dismissal with prejudice is appropriate when the flaws in [the] pleading are incurable.") (quoting *Green Star Energy Sols., LLC v. Edison Props.*, LLC, 2022 WL 16540835, at *17 (S.D.N.Y. Oct. 28, 2022)) (internal quotation marks omitted).

b.  Counts One, Two, and Three are dismissed without prejudice.  However, these claims all arise under state law, and the court therefore declines to exercise supplemental jurisdiction over them.  *See* 28 U.S.C. § 1367(c)(3) (providing that the court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it has original jurisdiction).

c.  There being no viable federal law claim in the amended complaint, and all federal law claims having been dismissed with prejudice, the Clerk of Court is asked to please enter judgment consistent with this order and close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2026.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE